UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
In re:                              :    Civil Action No. 09-4371 (JAP)
                                    :    Bankr. Case No. 03-51524
                                    :
CONGOLEUM CORPORATION, *et. al.*,   :
                                    :    **OPINION**
    Debtors and Debtors-in-Possession.  :
_____ :

PISANO, District Judge:

Presently before the Court is Debtors' motion for an Order Authorizing and Approving the Settlement and Policy Buyback Agreement and Release, as amended,[1] among the Congleum Entities, the Plan Trust, the ABI Entities, and the St. Paul Travelers Entities and Sale of Subject Policies (the "Travelers Settlement") pursuant to Federal Rule of Bankruptcy Procedure 9019, and Bankruptcy Code §§ 363 and 105(a).  The Debtors' motion was granted and an Order was entered approving the Travelers Settlement for the reasons set forth below on February 19, 2010.  Docket Entry No. 378.

**I.     Background**

The facts and procedural history of this protracted bankruptcy litigation are set forth in the Court's Opinion of August 17, 2009, affirming in part and denying in part the Bankruptcy Court's Order dismissing the Twelfth Amended Plan, and reversing and vacating the Bankruptcy Court's dismissal of the Debtor's bankruptcy cases.  Therefore, the Court shall only recite the facts relevant to the resolution of the present motion.

---

[1] The Travelers Settlement was amended via letter agreement entered into on January 28, 2010, in which the Debtors and the St. Paul Travelers Entities agreed to 1) confirmed that the April 26, 2006 agreement remain in full force and effect as of its original date, and 2) that certain definitions and provisions be revised to reflect developments in the Chapter 11 cases since April 26, 2006.

1

Between 1972 and 1983, the St. Paul Travelers Entities issued eighteen policies to the Debtors that are subject to the Travelers Settlement. All of the St. Paul Travelers policies are at or above the third excess layer of coverage. The Debtors contend that the aggregate coverage provided by the eighteen St. Paul Travelers policies is between $100 and $150 million. The amount of coverage provided under the policies is contested by the St. Paul Travelers Entities. Further, the St. Paul Travelers Entities dispute the allocation of losses incurred during the policy periods.

On September 12, 2001, two of the Debtors' excess insurers, including the St. Paul Travelers Entities, filed an action styled *Congoleum Corporation v. ACE American Insurance Company, et al.*, Docket No. MID-L-8908-01, in the Superior Court of New Jersey, Law Division, Middlesex County, seeking a declaration of their rights and obligations under the excess insurance policies for asbestos claims against the Debtors (the "Coverage Action"). Subsequently, the Debtors negotiated a settlement with the majority of the asbestos claimants which provided a global resolution of the Debtors' asbestos liability. (the "Claimant Agreement"). The Claimant Agreement was to be effectuated through the filing of a prepackaged bankruptcy. Payments under the Claimant Agreement would be made out of a trust funded by the Debtors' insurance proceeds. The excess insurers, including the St. Paul Travelers Entities, refused to pay claims settled by the Claimant Agreement.

On April 26, 2006, the Debtors and the St. Paul Travelers Entities entered into the Travelers Settlement. Under the terms of the settlement, the St. Paul Travelers Entities agreed to pay $25 million into the Plan Trust, over a period of 13 months, in full and final accord and satisfaction of all disputes between the Debtors and the St. Paul Travelers Entities. The Travelers Settlement also provided the St. Paul Travelers Entities with a channeling injunction

under 11 U.S.C. § 524(g) for asbestos claims that may be asserted against the St. Paul Travelers Entities, and an injunction under 11 U.S.C. § 105(a) for any non-asbestos related claims that may be asserted against the St. Paul Travelers Entities.  Under the terms of the settlement, the St. Paul Travelers Entities also agreed to stand down in the Coverage Action and were subsequently dismissed from that litigation.  The St. Paul Travelers Entities retained the right under the Travelers Settlement to file a new coverage action in the event the Travelers Settlement is not approved, however.  The other excess insurers continued to litigate the Coverage Action and in 2007, the state court rendered a decision in Phase I of that litigation, holding that the excess insurers have no obligation to provide insurance coverage for claims settled by the Claimant Agreement.

On May 3, 2006, the Debtors sought approval of the Travelers Settlement in the Bankruptcy Court.  The Future Claimant's Representative ("FCR") objected to the settlement, asserting that the settlement was negotiated in bad faith and was unreasonable in light of the coverage limits under the policies.  The Bankruptcy Court issued a written decision on May 11, 2007, in which it found that it was unable to determine whether the agreement was fair and equitable in light of the "unanswered questions" that existed at the time.  The Bankruptcy Court did determine, however, that the Travelers Settlement was not negotiated in bad faith.[2]  The Debtors appealed, and in an Opinion rendered by Judge Wolfson, this Court determined that the Bankruptcy Court erred in its application of the factors articulated by the Third Circuit in *In re Martin*, 91 F.3d 389 (3d Cir. 1996), and remanded the matter to the Bankruptcy Court for further consideration.  Civil Action No. 07-2785 (FLW).  The Bankruptcy Court did not take the matter

---

[2] The FCR did not appeal the Bankruptcy Court's decision that the Travelers Settlement was not the product of bad faith.

up again prior to August 2009, at which time this Court withdrew the reference.  Civil Action No. 09-1337 (JAP).

The Debtors have recently reached settlements with all but one of their excess insurers, and have also reached settlements with the New Jersey Property-Liability Insurance Guaranty Association and New Jersey Surplus Lines Insurance Guaranty Fund (the "Multi-Insurer Settlement").  Docket Entry No. 314.  The Debtors are in the process of negotiating a settlement with the one remaining unsettled insurer.  Motion Hearing Transcript ("Tr.") at 14:17-15:3.  The FCR was active in negotiating the Multi-Insurer Settlement and did not object to entry of orders approving the settlement.  Through the Multi-Insurer Settlement, the Debtors have resolved nearly all outstanding issues in the Coverage Action and have secured a source of funding for the Plan Trust.  This Court approved the Multi-Insurer Settlement on February 19, 2010.  Docket Entry No. 362-377.

The Debtors' motion seeking approval of the Travelers Settlement was heard on February 19, 2010.  After hearing all interested parties, including the FCR, the Court entered an Order approving the Travelers Settlement.

## II.     Standard of Review

Federal Rule of Bankruptcy Procedure 9019(a) provides that "the court may approve a compromise or settlement" upon twenty-one days notice to the creditors, the United States trustee, and the debtor.  Fed. R. Bankr. P. 9019(a).  Further, in order "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"  *Martin*, *supra*, 91 F.3d at 393 (quoting 9 *Collier on Bankruptcy* ¶ 9019.3[1] (15th ed. 1993)).  The Court may approve a settlement that is "fair and equitable."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  When

determining if a proposed settlement is "fair and equitable," the court is not required to delve into the many issues of fact and law that may be raised by the settlement, but instead should "canvass the issues" and determine "whether the settlement falls below the lowest point in the range of reasonableness." *In re Jasmine*, *Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000) (quoting *In re Neshaminy Office Building Assocs.,* 62 B.R. 798, 803 (E.D.Pa.1986)).

When deciding whether a settlement "falls below the lowest point in the range of reasonableness" the Court is called upon to "assess and balance the value of the claim that is being compromised against the value to the estate of the compromise proposal." *Martin*, *supra*, 91 F.3d at 393.  In making this assessment, the Court must consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id*.

### III.    Discussion

The FCR objects to the Travelers Settlement because, he argues, the amount of the Travelers Settlement is unreasonably low when viewed in light of the circumstances as they existed in 2006.[3]  Tr. at 32:13-33:15.  As a threshold matter, the Court notes that the FCR's objection is procedurally deficient and may be disregarded on that basis alone.  *See In re American Family Enter.*, 256 B.R. 377, 429 (D.N.J. 2000) (objections that are "unclear or unintelligible" may be overruled as meritless).  Instead of filing opposition to the instant motion, the FCR chose to file a pleading entitled "Future Claimant's Representative's Statement and

---

[3] The FCR argues that this Court must analyze the settlement agreement under the factual circumstances as they existed when the parties first entered into the Travelers Settlement in 2006. Tr. at 32:14-32:25.  The Third Circuit has stated that when asked to rule on the reasonableness of a settlement agreement, the Court should be informed "of any changed circumstances since the entry of the stipulation of settlement." *See Martin*, 91 F.3d at 394.  If the Court were not kept informed of changed circumstances "[the Court] could proceed without full information, and the creditor body could suffer." *Id.* at 395.  Accordingly, this Court shall analyze the reasonableness of the Travelers Settlement in light of the current circumstances.

Reservation of Rights to Debtors' Motion for an Order Authorizing and Approving the Settlement and Policy Buyback Agreement and Release, as amended, among the Congoleum Entities, the Plan Trust, the ABI Entities, and the St. Paul Travelers Entities" (the "Reservation of Rights"). Docket Entry No. 339. The Reservation of Rights states only that "[f]or various reasons, including certain of those referenced in earlier filings before this Court and the Bankruptcy Court, the [FCR] does not support the Motion and respectfully reserves all of his rights in connection therewith." *Id.* at 2.

The FCR's Reservation of Rights, which this Court has treated as an objection, is vague in the extreme. It does not provide sufficient notice to the Court, the Debtors, or the St. Paul Travelers Entities of the FCR's specific objections, instead, it states that "for various reasons" the FCR does not support the Travelers Settlement. Nevertheless, this Court will not overrule the FCR's objection as procedurally deficient. The Court will address the merits of the Debtors' motion.

### A. Factor One: The Probability of Success in Litigation

The FCR argues that the St. Paul Travelers Entities are differently situated than the insurers who are parties to the Multi-Insurer Settlement because the St. Paul Travelers Entities are not parties to the Coverage Action. Tr. at 33:1-33:6. The FCR fails to acknowledge, however, that the St. Paul Travelers Entities withdrew from the Coverage Action in 2006, after entering into the Travelers Settlement. The terms of the Travelers Settlement required the St. Paul Travelers Entities to dismiss all claims in the Coverage Action but gave them the right to commence a new action in the event the Travelers Settlement is not approved by the Court. The Coverage Action has been continuing in the state court for more than eight years. In 2007, Phase I of the litigation concluded when the state court held that the Debtors are not entitled to

coverage for the settlements reached as part of the Claimant Agreement. Phase II of the Coverage Action has now been underway for a number of years.

Were the Court to reject the Travelers Settlement, the St. Paul Travelers Entities would be free to file a new action seeking to avoid coverage for the asbestos claims at issue in this case. Given the insurers' victory in Phase I of the Coverage Action, the Court concludes that the outcome of any litigation over the disputes between the Debtors and the St. Paul Travelers Entities is far from certain. The uncertainty inherent in the coverage litigation weighs in favor of approving the Travelers Settlement.

### B. Factor Two: The Likely Difficulties in Collection

As noted in both the Bankruptcy Court's Opinion of May 11, 2007, and Judge Wolfson's Opinion of March 25, 2008, there is no reason to believe that the St. Paul Travelers Entities are insolvent. This Court concludes that likely difficulties in collection are not an issue, and that this factor does not weigh in favor of approving the Travelers Settlement.

### C. Factor Three: The Complexity of the Litigation Involved

In her March 25, 2008 Opinion, Judge Wolfson noted that the Debtors' pursuit of coverage for asbestos claims settled by the Claimant Agreement and other pre-petition settlements "may have grown complex and difficult." The Coverage Action, to which the St. Paul Travelers Entities are no longer parties, has been ongoing in the state court since September 2001, and is still far from being resolved absent the pending settlements. The issues present in the coverage dispute include whether present and future asbestos claimants are entitled to coverage, how coverage determinations should be made, disagreements regarding policy limits, and the manner in which losses should be allocated between the various insurers. Phase I of the Coverage Action took six years to resolve, and Phase II has been ongoing for an additional three

years.  As stated above, were this Court to reject the Travelers Settlement, the St. Paul Travelers Entities have the right to file a new action seeking to avoid coverage for the asbestos claims at issue in this case.  A new action filed by the St. Paul Travelers Entities would involve the same complex coverage issues that have caused the Coverage Action to drag on in the state court since 2001.  This Court concludes that the issues in this case are quite complex and that the complexity of the litigation weighs in favor of approving the Travelers Settlement.

### D.  Factor Four: The Paramount Interest of the Creditors

While courts give deference to the reasonable objections of creditors, creditor objections are not dispositive.  *In re Key3Media Group, Inc.*, 336 B.R. 87, 97 (Bankr. D. Del. 2005).  A court may also give weight to the opinions of "the trustees, the parties, and their counsel" when determining whether a settlement is reasonable.  *Id.*  Further, when assessing the reasonableness of a settlement, the Court must not allow the interest of one creditor "to predominate over the best interests of the estate as a whole." *Id.*

The Travelers Settlement resolves the disputed coverage issues between the Debtors and the St. Paul Travelers Entities, thus avoiding a new round of complex and expensive coverage litigation.  Further, the amount of the Travelers Settlement, $25 million paid over 13 months, is the largest settlement reached between the Debtors and any of the insurers, and is a significant source of funding for the Trust.  Finally, the only creditor constituency that objects to the settlement is the FCR.  The Asbestos Claimants' Committee and the Bondholders' Committee both support the Travelers Settlement.  Tr. at 28:14-28:22.  Therefore, the Court concludes that the Travelers Settlement is in the paramount interest of the creditors.

### IV.   Conclusion

For the reasons set forth above, the Court concludes that the Travelers Settlement falls within the range of reasonableness, the Debtors' Motion for an Order Authorizing and Approving the Settlement and Policy Buyback Agreement and Release, as amended, among the Congoleum Entities, the Plan Trust, the ABI Entities and the St. Paul Travelers Entities and the Sale of Subject Policies is granted, and the Travelers Settlement is approved.  An Order approving the Travelers Settlement was entered by this Court on February 19, 2010.  Docket Entry No. 378.

/s/  JOEL A. PISANO
United States District Judge

Dated:  March 22, 2010