UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ROBERTA A. DeANGELIS
ACTING UNITED STATES TRUSTEE, REGION 3
Mitchell B. Hausman, Esquire (MH 1464)
Robert J. Schneider, Esquire (RS 0595)
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES DISTRICT  COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | Civil Action No. 09-4371 (JAP) |
| In re: | : | |
| | : | Chapter 11 |
| Congoleum Corporation, *et al.*, | : | |
| | : | Case No. 03-51524 (KCF) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____ | : | Hearing Date: April 20, 2010, at 9:30 a.m. |

**OBJECTION BY THE ACTING UNITED STATES TRUSTEE TO
(i) THE DEBTORS' PRE-PETITION PAYMENTS TO PERRY WEITZ, ESQ.
AND JOSEPH RICE, ESQ., AND (ii) THE FOURTH AMENDED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE OF THE DEBTORS, THE OFFICIAL ASBESTOS CLAIMANTS'
COMMITTEE, THE OFFICIAL COMMITTEE OF BONDHOLDERS FOR
CONGOLEUM CORPORATION, ET AL., AND THE FUTURE CLAIMANTS'
REPRESENTATIVE DATED AS OF MARCH 11, 2010**

The Acting United States Trustee, by and through counsel, in furtherance of her duties

under 28 U.S.C. § 586(a)(3)(B), and pursuant to the standing granted by 11 U.S.C. § 307, hereby

objects to (i) the above-captioned debtors' pre-petition payments to Perry Weitz, Esq. and Joseph

Rice, Esq., and (ii) the Fourth Amended Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code of the Debtors, the Official Asbestos Claimants' Committee, the Official

Committee of Bondholders for Congoleum Corporation, et al., and the Future Claimants'

Representative Dated as of March 11, 2010 ("Fourth Amended Joint Plan").  In support of her

objection, the Acting United States Trustee respectfully states as follows:

## STATEMENT OF FACTS

### I.   Background and Events Leading to Bankruptcy Filing

Congoleum Corporation, Congoleum Sales, Inc., and Congoleum Fiscal, Inc., (collectively, the "Debtors" or "Congoleum") are New Jersey-based companies that manufacture floor tile and other products.  From 1981 through 2002, approximately 70,000 tort lawsuits alleged bodily injury from exposure to asbestos contained in the floor tiles Congoleum manufactured.  Most of the asbestos claims were settled by Congoleum's primary insurers, who then argued that primary insurance coverage was exhausted as of August 2002.  *See In re Congoleum Corp.*, 414 B.R. 44, 47 (D.N.J. 2009).

In February 2001, as a result of mounting asbestos claims, Congoleum sought an agreement with its excess insurers regarding how claims against Congoleum would be handled and paid.  No agreement was reached, so some of the excess insurers filed an action in the Superior Court of New Jersey seeking a ruling that they had no obligation to defend or indemnify Congoleum's asbestos claims.  *Id.* at 48.

In July 2001, while Congoleum was still trying to resolve cases in the tort system, a jury returned damages-only verdicts in favor of asbestos claimants Kenneth Cook and Richard Arseneault ("Cook and Arseneault") in the amounts of $18.1 million and $15.8 million, respectively.  *Id.*  Cook and Arseneault were represented by Perry Weitz, Esq. ("Weitz").  *Id.*

On September 3, 2002, Gilbert Heintz & Randolph ("GHR") entered into a "Relationship Letter" with Weitz's law firm, Weitz & Luxenberg, P.C. ("W&L").  *See* "Relationship Letter," attached hereto as Exhibit A.  This letter set forth the division of fees between GHR and W&L in

connection with the firms' "representation of claimants with asbestos-related insurance claims against various policyholders and their insurers."  *Id.*

Thereafter, Weitz proposed a settlement of the Cook and Arseneault cases, but on September 23, 2002, Congoleum's Chief Financial Officer informed Weitz that Congoleum did not have money separate from its insurance coverage with which to fund the proposed settlement. *See In re Congoleum Corp.*, 414 B.R. at 49.  In October 2002, although Congoleum was still negotiating with its insurers, it started considering a pre-packaged bankruptcy to resolve its asbestos liabilities.  *Id.* at 48-49.

On Weitz's recommendation, Congoleum contacted Scott Gilbert, Esq. of GHR, which Congoleum retained on October 1, 2002.  That same day, Gilbert and Weitz agreed to settle the Cook and Arseneault cases for $8 million each, of which $800,000 was to be paid in cash and the remaining $7.2 million was to be paid from insurance proceeds.  This agreement ("Pre-Petition Settlement Agreement") was memorialized in writing on October 21, 2002.  *Id.* at 49.

Shortly thereafter, GHR contacted Weitz and Joseph Rice, Esq. ("Rice"), who also represented a large number of Congoleum's asbestos claimants, in the hope that Weitz and Rice could recruit enough asbestos claimants to approve a potential reorganization plan to ensure the acceptance of at least 75% of such claimants, as required by 11 U.S.C. § 524(g).  *Id.*   In December 2002, Congoleum met with its lender to discuss the financing of a pre-packaged bankruptcy; notes from this meeting indicate that the parties discussed payment of "facilitation fees" to Weitz and Rice.  *Id.* at 50.

II.     **The Claimant Agreement**

On April 13, 2003, Congoleum entered into a Settlement Agreement Between

Congoleum Corporation and Various Asbestos Claimants (the "Claimant Agreement," Bankr.

Docket Entry 177-5).  The Claimant Agreement, along with a Collateral Trust Agreement and

Security Agreement, effectively created a class of partially-secured creditors who would receive

treatment superior to all claimants who did not accept the Pre-Petition Settlement Agreement and

the Claimant Agreement.

The Claimant Agreement also provided for payments of $1 million each to Weitz and

Rice ("Weitz/Rice Payments"), who were referred to in the Claimant Agreement as "Claimants'

Counsel."  The Claimant Agreement states, in relevant part, as follows:

> VI.     Payment to Claimants Counsel
>
> Promptly on or as soon as practicable after the Effective
> Date of this Claimant Agreement, Congoleum will pay $1,000,000
> to each Claimants' Counsel ("Expense Payments").  Expense
> Payments will be used by Claimants' Counsel to pay all out-of-
> pocket expenses, reasonable  professionals' fees and expenses, and
> other costs that the Claimants' Counsel may have incurred or may
> incur (i) in connection with the negotiation and implementation of
> this Claimant Agreement and the Collateral Trust Agreement and
> Security Agreement, (ii) in connection with the negotiation of a
> possible "pre-packaged" chapter 11 plan of reorganization for
> Congoleum, and/or (iii) in connection with the due diligence
> investigations related to a possible chapter 11 plan of
> reorganization.

*See* Bankr. Docket Entry 177-5, at 9.

The Claimant Agreement does not specify any conditions to the Weitz/Rice Payments,

including whether Congoleum need only reimburse Weitz's and Rice's actual expenses, whether

Congoleum requires documentation to verify Weitz's and Rice's expenses, or whether Weitz and

Rice are required to return any portion of the Weitz/Rice Payments for any reason.[1]

Asbestos claimants had until July 2003 to submit their claims to be part of the Claimant Agreement.  The claims were to be reviewed by the Kenesis Group, LLP, a claims reviewing company that was majority-owned by GHR.  In 2003, Kenesis merged with Clearinghouse, a firm owned by Rice's paralegal, Benee Wallace.  By October 2003, the number of asbestos claimants who submitted claims under the Claimant Agreement totaled approximately 79,000. *See In re Congoleum Corp.*, 414 B.R. at 50.

## III.        Bankruptcy Filing and Post-Petition Events

On December 31, 2003, the Congoleum companies filed separate voluntary petitions for relief under chapter 11 of title 11 of the United States Code.  On January 22, 2004, the Debtors filed a pre-packaged reorganization plan ("Original Plan," Bankr. Docket Entry 176).  The Original Plan was structured to incorporate the Claimant Agreement and other related pre-petition agreements.  Thus, under the Original Plan, parties to the Pre-Petition Settlement Agreement (such as Cook and Arseneault) were Class 2 claimants, parties to the Claimant Agreement were Class 3 claimants, and all other asbestos injury claimants were members of other classes.  In essence, the Original Plan earmarked the first $225 million in insurance proceeds for the benefit of Class 2 and Class 3 claimants.  The Original Plan drew objections from the Debtors' insurers, the United States Trustee, and disfavored asbestos claimants.  *See In re Congoleum Corp.*, 414 B.R. at 49-50.

Under the Original Plan, the term "Claimants' Representative" was defined as "Joseph F.

---

[1] Upon information and belief, the Weitz/Rice Payments were made in 2003, but Congoleum never received any substantiation of the expenses incurred by Weitz and Rice until 2006, after the Debtors commenced litigation to recover the Weitz/Rice Payments.

Rice, Esquire and Perry Weitz, Esquire, collectively, in their capacity under the Claimant Agreement as the representatives of certain holders of Asbestos Personal Injury Claims." *See* Original Plan, Bankr. Docket Entry 176, at 8.

On December 2, 2004, the Third Circuit rendered a decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004), which held that the type of pre-packaged plan proposed by the Debtors, which favored asbestos claimants who had entered into pre-petition agreements, violated the equality of distribution required by 11 U.S.C. § 524(g). Following the *Combustion Engineering* decision, the Debtors withdrew the Original Plan. They filed an amended plan in July 2005, but withdrew it in December 2005 after learning that some of Weitz's clients no longer supported it. *See In re Congoleum Corp.*, 414 B.R. at 51.

The Debtors then initiated an avoidance action against claimants who had received preferential treatment under the Pre-Petition Settlement Agreement and the Claimant Agreement, and to recover the Weitz/Rice Payments ("Avoidance Action"). *Id.* at 51. Eventually, the parties resolved the Avoidance Action via a settlement approved by the Bankruptcy Court on October 31, 2008 ("Litigation Settlement Agreement," Bankr. Adv. No. 05-6245, Docket Entry 350).[2] In approving the Litigation Settlement Agreement, the Bankruptcy Court noted that "approval of this settlement does not include a finding that any piece of the settlement meets the standards required for confirmation." *See* Litigation Settlement Opinion, Bankr. Adv. No. 05-6245, Docket Entry 346, at 3.

---

[2] The Litigation Settlement Agreement was amended on October 22, 2009, as the plan proponents seek District Court approval under Fed. R. Bankr. P. 9019 of the First Amendment to the Litigation Settlement Agreement through confirmation of the pending plan. The First Amendment to the Litigation Settlement Agreement does not affect the issues related to the Weitz/Rice Payments.

Subsequent to the Third Circuit's *Combustion Engineering* decision, various parties filed numerous plans in attempts to reorganize the Debtors. The final three plans before the Bankruptcy Court failed on summary judgment. The Tenth Amended Plan, and the penultimate Eleventh Amended Plan, failed summary judgment because the Bankruptcy Court found that they continued to "violate[ ] the requirement that current and future asbestos claimants be treated equally with those claimants who were parties to the Claimants' Agreement or the Pre-Petition Settlement Agreement." *See In re Congoleum Corp*, 414 B.R. at 53. In addition, the Bankruptcy Court also found that the plans failed summary judgment because they precluded judicial review and approval of the $2 million "facilitation fees" paid to Weitz and Rice. *Id.*

IV.    **Superior Court and Bankruptcy Court Opinions Regarding Weitz/Rice Payments**

On May 18, 2007, New Jersey Superior Court Judge Stroumtsos issued a decision in a state court action involving Congoleum's insurers' liability under the Claimant Agreement. *See Congoleum Corp. v. Ace Am. Ins. Co.,* Docket No. MID-L-8908-01 (N.J. Super. Ct. May 18, 2007), attached hereto as Exhibit B. Judge Stroumtsos held that the insurers were not obligated to provide insurance coverage in relation to the Claimant Agreement because they had reasonably denied coverage. *Id*. at 11. In addition, Judge Stroumtsos held that the Claimant Agreement is "an unreasonable agreement, not made in good faith." *Id.* at 16. As evidence of bad faith, Judge Stroumtsos relied on several factors, including "that GHR colluded with Rice and Weitz to create a framework that would provide Congoleum with both the insurance money and also protect against the asbestos liability, while leaving the insurance companies to bear the costs." *Id.* at 12. Judge Stroumtsos also found that "the prepackaged bankruptcy plan enabled the conflicted plaintiffs' lawyers to liquidate their claims before Congoleum filed a bankruptcy

petition, thereby giving them an unfair priority in relation to Congoleum's other creditors." *Id.*

at 12.  Judge Stroumtsos further noted that "Congoleum's representatives characterized the

proposed fee to be paid to Weitz and Rice as a 'payoff.'" *Id.* at 8.

On February 26, 2009, the Bankruptcy Court denied confirmation of the Twelfth

Amended Joint Plan of Reorganization ("Twelfth Amended Plan," Bankr. Docket Entry 6998).

The Bankruptcy Court's opinion addressed two issues: the Weitz/Rice Payments and the Twelfth

Amended Plan's disparate treatment of asbestos plaintiffs' claims.  Regarding the Weitz/Rice

Payments, the Bankruptcy Court focused on the following relevant language contained in the

Twelfth Amended Plan:

> 5.14  <u>Litigation Settlement Agreement</u>
>
>        *       *       *
>
> (b)  As of the Effective Date of the Plan:
>
>        *       *       *
>
> (iii)     The Debtors shall be deemed to have forever withdrawn, released, discharged, waived and forgiven . . . Claimants' Counsel . . . for and from any and all claims, actions, causes of action, counterclaims, proofs of claim, and any other obligation of any kind or nature arising from or related to the Bankruptcy Code, the Avoidance Actions, and any and all claims related to any Pre-Petition Settlement Agreement, Claimant Agreement, the Collateral Trust Agreement, Security Agreement, ***pre-petition payments to Claimants Counsel***, and any and all other agreements and amendments thereto with respect to the pre-packaged plan of reorganization filed by the Debtors on December 31, 2003, including all pending and potential causes of action, whether accrued or to accrue . . . .

*See* Twelfth Amended Plan, Bankr. Docket Entry 6998, at 25-26 (emphasis added).

The Bankruptcy Court admonished the parties for ignoring its prior decisions, which had

cautioned that the Weitz/Rice Payments must be subject to court review pursuant to 11 U.S.C.

§ 1129(a)(4).  *See In re Congoleum Corp.*, 2009 WL 499262, *3-*4 (Bankr. D.N.J. Feb. 26,

2009).  The Bankruptcy Court also noted that the Twelfth Amended Plan was not only silent as

to court review, but actually precluded such review since a disallowance of the Weitz/Rice

Payments would require redrafting the entire plan.  The Bankruptcy Court specifically stated that

> this [Twelfth Amended] Plan has express provisions that would
> negate the Court's ability to review fees meaningfully . . . . [T]he
> inclusion of § 5.14(b)(iii) in the Plan seeks to make that review a
> nullity.  With no express provision in the Amended Joint Plan for
> recapturing any fees the Court might disapprove under
> § 1129(a)(4), the Plan Proponents – over whom Claimants'
> Counsel hold considerable sway – have set up a perfect situation
> for Claimants' Counsel to safeguard their million dollar payments.

*Id.* at *5.

The Bankruptcy Court further found that "the Plan was drafted this way to give Claimants'

Counsel a toehold to argue that they do not have to return the payments to the estate no matter

what finding the bankruptcy court may make under § 1129(a)(4).  If a plan were confirmed with

the § 5.14(b)(iii) language proposed, any review by this Court of the pre-petition payments

would be illusory[.]"  *Id.* at *6.

Regarding the proposed disparate treatment of asbestos plaintiffs' claims, the Bankruptcy

Court stated that even after the Third Circuit's *Combustion Engineering* decision "the parties

have still failed to put forth a plan consistent with [the] fundamental concept [of equality of

distribution among asbestos claimants]."  *Id.*

The Bankruptcy Court then issued an order dismissing the bankruptcy cases.  *See* Bankr.

Docket Entry 7219.  The order denying confirmation of the Twelfth Amended Plan and dismissal

order were appealed, and on August 17, 2009, this Court issued an order reversing in part and

affirming in part the order denying confirmation and reversed and vacated the dismissal order. Further, this Court withdrew the reference pursuant to 28 U.S.C. § 157(d), and it has presided over all subsequent hearings.

This Court's opinion, dated August 17, 2009, held that the Weitz/Rice Payments are subject to review pursuant to 11 U.S.C. § 1129(a)(4). *See In re Congoleum Corp*, 414 B.R. at 59. This Court also stated that the Weitz/Rice Payments are subject to review for reasonableness under the "totality of the circumstances," and invited Weitz and Rice to "submit evidence regarding the costs incurred warranting the $2 million in fees." *Id*. at 62.

## ARGUMENT

The Acting United States Trustee objects to the Debtors' pre-petition payments to Weitz and Rice as unreasonable under the totality of the circumstances. The Weitz/Rice Payments are unreasonable because Weitz and Rice possessed actual conflicts of interest. On the one hand, they owed a duty to their own asbestos injury clients and, as "Claimants' Counsel" under the Claimants Agreement, to all asbestos injury claimants party to the Claimant Agreement. On the other hand, Weitz and Rice received $1 million each from the Debtors under the Claimant Agreement to facilitate the Debtors' pre-packaged chapter 11 plan. As they were beholden to two masters with diametrically opposed interests, Weitz and Rice had an actual conflict of interest that renders unreasonable any amounts paid to them by the Debtors.

The Weitz/Rice Payments are also unreasonable under the totality of the circumstances for five additional reasons. First, Weitz and Rice negotiated and pursued a plan of reorganization that was contrary to the Bankruptcy Code, and they continued to pursue the same arrangement even after the Third Circuit rendered its decision in *Combustion Engineering*.

Second, the New Jersey Superior Court found that the Claimant Agreement was unreasonable, in bad faith, and collusive.  Third, the Claimants Agreement applies only to pre-petition expenses, and not to expenses incurred after filing of a petition and pre-packaged plan.  Fourth, the documents supplied to the Office of the United States Trustee to support the Weitz/Rice Payments show that most of the expenses were incurred after the Third Circuit's *Combustion Engineering* decision made clear that the Claimants' Agreement construct was untenable under the Bankruptcy Code.  Fifth, the supporting documents provided to the Office of the United States Trustee include expenses incurred to defend their $2 million "facilitation fees" as well as extensive travel on non-commercial jets.

The Acting United States Trustee also objects to the Fourth Amended Joint Plan because it does not provide for the recovery by the Debtors of any disallowed portion of the Weitz/Rice Payments, and it releases Weitz and Rice from any potential liability.

I.    **The Weitz/Rice Payments Should be Disallowed Under 11 U.S.C. § 1129(a)(4) Because Weitz and Rice Possess Actual Conflicts of Interest**

Under 11 U.S.C. § 1129(a)(4) ("Section 1129(a)(4)"), a chapter 11 plan may only be confirmed if "[a]ny payment made or to be made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  The question before this Court is whether the Weitz/Rice Payments were reasonable for purposes of Section 1129(a)(4).

Section 1129(a)(4) is derived from section 221 of the Bankruptcy Act of 1898.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977).  In interpreting Section 1129(a)(4)'s predecessor, the Supreme Court found that "'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act."  *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268 (1941).  As a result, when a claimant "was serving more than one master or was subject to conflicting interests, he should be denied compensation."  *Id*.  A claimant serving multiple masters "may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one."  *Id*. at 269.

It is undisputed that Weitz and Rice acted as counsel to their own asbestos injury clients, and as "Claimants' Counsel" under the Claimant Agreement they were required to act on behalf of all asbestos injury claimants party to the Claimant Agreement.  On the other hand, under the Claimant Agreement, Weitz and Rice each received $1 million ***from the Debtors*** to cover the expenses they were expected to incur in connection with negotiating and implementing the

Claimant Agreement and related agreements, negotiating a pre-packaged chapter 11 plan, and engaging in due diligence related to a chapter 11 plan.  As a result, under the Claimant Agreement, which they both signed, Weitz and Rice committed to render services on behalf of the Debtors as well as the asbestos injury claimants suing the Debtors.  Thus, they were beholden to two masters whose interests were diametrically opposed – the Debtors (who presumably wanted to pay the asbestos injury claimants as little money as possible) and the asbestos injury claimants (who presumably wanted to recover from the Debtors as much money as possible).

The Debtors sought to engage the services of Weitz and Rice in order to attain the 75% approval of asbestos injury claimants required by 11 U.S.C. § 524(g).  Weitz and Rice are experienced lawyers, and the job they were engaged to perform for the Debtors requires the use of their legal acumen.  Of course, the Debtors could not have employed Weitz and Rice in this case under 11 U.S.C. § 327(a), as their concurrent representation of tort litigants suing the Debtors would have disqualified them just as GHR's concurrent representations disqualified it.[3] *See In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005); *cf. In re Marvel Entm't Group*, 140 F.3d 463, 476 (3d Cir. 1998) (Third Circuit precedent requires *per se* disqualification of counsel

---

[3] GHR was disqualified as it had violated the Rules of Professional Conduct and was not "disinterested" as required by 11 U.S.C. § 327(a).  *See In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005).  GHR was ordered to disgorge $9,662,486.71 in fees and expenses, and an additional $3,312,151.53 in fees and expenses were disallowed.  *See* Bankr. Docket Entry 3826.  Since the recovery of funds from GHR was based partly on its connections with Weitz and Rice, Weitz and Rice's connections with GHR are certainly included in the "totality of the circumstances" this Court must analyze under Section 1129(a)(4) regarding the Weitz/Rice Payments.  For example, Weitz and GHR entered into the Relationship Letter before Weitz referred the Debtors to GHR.  In addition, on the day the Debtors hired GHR they agreed to settle the actions brought by Weitz's clients Cook and Arseneault.  Indeed, while the exact number is not known, Weitz apparently represented, with Gilbert as his co-counsel, many asbestos claimants who presented claims against Congoleum, and Weitz and Gilbert also served as co-counsel for Cook and Arseneault in their claims against another bankrupt asbestos company.  *Id*. at 689 n.14.

with actual conflict of interest, and discretionary disqualification of counsel with potential

conflict of interest).  But, the services rendered pre-petition by Weitz and Rice in negotiating the

pre-packaged plan, if rendered post-petition in a non-prepackaged chapter 11 case, would have

required them to be employed under 11 U.S.C. § 327 before they could receive estate funds

under 11 U.S.C. § 330.  *See Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3d

Cir. 1997) ("An attorney whose employment has not been approved under § 327 can be required

to return compensation for the services provided to the debtor-in-possession[.]"); *cf. F/S Airlease

II v. Simon*, 844 F.2d 99, 108-09 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988) (professional

services rendered assisting the debtor may only be compensated under 11 U.S.C. § 503(b)(2),

which allows administrative expense treatment only to fees and expenses authorized under 11

U.S.C. § 330, which may only be awarded to professionals that have first been employed under

11 U.S.C. § 327).  Just as Weitz and Rice's actual conflicts of interest would require

disallowance of payment for such services if rendered post-petition and sought under 11 U.S.C.

§ 330, their actual conflicts of interest require disallowance of payment for Weitz and Rice's

services rendered pre-petition and sought under Section 1129(a)(4).

    In any event, the fact that Weitz and Rice were engaged pre-petition does not mean they

were free to represent conflicting interests with impunity.  As attorneys appearing before the

bankruptcy and District Courts of the District of New Jersey, Weitz and Rice's actions are

subject to the Rules of Professional Conduct ("RPCs") as revised by the New Jersey Supreme

Court.  *See* D.N.J. Local Rule 103.1.[4]

---

[4] RPCs that may be implicated by Weitz and Rice's concurrent duties to the Debtors and
the asbestos injury claimants include, but are not limited to, the following: RPC 1.5(a) ("A
lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an
unreasonable amount for expenses"); RPC 1.7(a) ("[A] lawyer shall not represent a client if the

In its decision disqualifying GHR in this case for having an actual conflict of interest (based in part on GHR's dealings with Weitz and Rice), the Third Circuit expressly noted that, as no party had raised the issue of the reasonableness of the Weitz/Rice Payments, it would not address them in its decision. *See In re Congoleum Corp.*, 426 F.3d at 681 n.9. Nevertheless, the Third Circuit proceeded to cite cases in which similar payments were disallowed due to conflicts of interest. By means of this reference, the Third Circuit apparently provided guidance regarding the Section 1129(a)(4) effect of payments such as those made to Weitz and Rice under the Claimant Agreement.

In one of the cases cited by the Third Circuit, Rice was paid a $20 million "success fee" by the debtor's parent to facilitate a settlement among other counsel representing asbestos claimants. *See In re Combustion Eng'g*, 295 B.R. 459, 478 (Bankr. D. Del. 2003), *vacated on other grounds*, 391 F.3d 190 (3d Cir. 2004). The bankruptcy court found that Rice had an actual conflict of interest because he had been paid by the parent of an entity he was suing. *In re Combustion Eng'g*, 295 B.R. at 478. The bankruptcy court stated that, at a minimum, Rice was required to obtain the informed consent of his tort clients to the fee arrangement, which he had not done. *Id.* The bankruptcy court further found that the payment to Rice was unreasonable under Section 1129(a)(4), but was not subject to court approval because it was paid by a non-debtor over which the court lacked jurisdiction. *Id.* at 479, 488. Instead, the bankruptcy court created an equitable remedy pursuant to which Rice was to obtain waivers from his clients after

---

representation involves a concurrent conflict of interest."); and RPC 1.8(f) ("A lawyer shall not accept compensation for representing a client from one other than the client unless [the client gives informed consent, there is no interference with the lawyer's independence, and client information is protected].").

informing them in writing of the conflict.[5]  *Id.* at 478.

The instant case is distinguishable from the *Combustion Engineering* bankruptcy court decision in that the Weitz/Rice Payments came directly from the Debtors, and not from a third party over which this Court lacks jurisdiction.  In addition, the fact that Rice was paid a $20 million "success fee" in *Combustion Engineering,* as opposed to Weitz and Rice being paid a combined $2 million for "reimbursement of expenses" in this case, is a distinction without a difference.  The name given to the payments is irrelevant; the payments in each case were intended to compensate Weitz and Rice in their efforts to facilitate a pre-packaged plan that would garner the support of a large number of asbestos claimants.

In light of the foregoing, Weitz and Rice possess an actual conflict of interest due to their competing duties owed to the Debtors and the asbestos injury claimants.  Given their disqualifying conflict of interest, Weitz and Rice's $2 million "facilitation fees" received from the Debtors were unreasonable for purposes of Section 1129(a)(4).  As a result, the Weitz/Rice Payments should be disallowed in their entirety.

---

[5] In an unpublished opinion, the District Court vacated the bankruptcy court's order to the extent that the bankruptcy court lacked jurisdiction to affect the relationship between Rice and his tort clients.  *See In re Combustion Eng'g*, District Court Civ. No. 03-755, slip op. at 10 (D.N.J. Sept. 15, 2003), *vacated and remanded on other grounds*, 391 F.3d 190 (3d Cir. 2004), attached hereto as Exhibit C.

**II.    The Weitz/Rice Payments Should be Disallowed Under 11 U.S.C. § 1129(a)(4) Because They Are Not Reasonable Under The Totality of the Circumstances**

Under the terms of the Claimant Agreement, the Weitz/Rice Payments were intended to cover fees and expenses Weitz and Rice had already incurred or were to incur "(i) in connection with the negotiation and implementation of the Claimant Agreement [and related agreements], (ii) in connection with the negotiation of a possible 'pre-packaged' chapter 11 plan of reorganization for Congoleum, and/or (iii) in connection with the due diligence investigations related to a possible chapter 11 plan of reorganization."

As the construct created by the Claimant Agreement and the negotiated pre-packaged plan were contrary to the strictures of 11 U.S.C. § 524(g), the services provided by Weitz and Rice were of no value to the Debtors or the chapter 11 bankruptcy estate.  This was made clear by the Third Circuit's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004).  In that decision, the Third Circuit merely clarified that 11 U.S.C. § 524(g), which had been on the books since 1994, did not allow for pre-petition agreements creating unequal treatment among past, present, and future asbestos claimants in violation of the statutorily-mandated equality of distribution.  Since the plan negotiated by Weitz and Rice proposed unequal treatment among asbestos claimants, it was, even in its planning stages, contrary to the Bankruptcy Code and unconfirmable.  As a result, it is not reasonable for the Debtors to reimburse any expenses incurred by Weitz and Rice in developing unconfirmable plans and defending the construct established by the Claimant Agreement (including expenses incurred in defending the Weitz/Rice Payments and the Avoidance Action).

In addition, the Weitz/Rice Payments are unreasonable because, as the New Jersey Superior Court found, the very Claimant Agreement that provided for the payments was "an

unreasonable agreement, not made in good faith." *See* Superior Court decision, attached hereto as Exhibit B, at 16.  The Superior Court found that GHR had "colluded" with Weitz and Rice, and had negotiated a pre-packaged plan that "enabled the conflicted plaintiffs' lawyers [i.e., Weitz and Rice] to liquidate their claims before Congoleum filed a bankruptcy petition, thereby giving them an unfair priority in relation to Congoleum's other creditors." *Id.* at 12.  The Superior Court also agreed with a number of the grounds that the insurers gave for declining to provide coverage, including  the payment of $1 million each to Weitz and Rice and the use of an entity affiliated with both GHR and Rice as the claims reviewer.  *Id.*  As the Weitz/Rice Payments were among the reasons the Superior Court found that the insurers need not provide coverage – a result detrimental to the Debtors – it is not reasonable for the Debtors to reimburse Weitz and Rice for expenses associated with the Claimant Agreement.

In any event, the "Payment to Claimants Counsel" section of the Claimant Agreement, under a literal reading of its terms, applies only to pre-petition fees and expenses incurred in negotiating the Original Plan.[6]  According to records provided to the Office of the United States Trustee, as of the petition date Rice had incurred expenses totaling only $199,847 and Weitz had incurred expenses totaling only $153,732.  *See* spreadsheets summarizing documents provided by Weitz and Rice, attached hereto as Exhibit D.

---

[6] Any recovery from the Debtors for Weitz and Rice's post-petition expenditures would constitute administrative expenses payable, if at all, under 11 U.S.C. § 503(b)(4), pursuant to which qualifying creditors counsel may receive administrative expense awards.  As a recovery under 11 U.S.C. § 503(b)(4) requires that counsel's client qualifies for administrative expense treatment under 11 U.S.C. § 503(b)(3), and Weitz and Rice's asbestos injury clients have not so qualified, Weitz and Rice are not eligible to have their post-petition expenditures reimbursed from estate funds under 11 U.S.C. § 503(b)(4).

At the very least, all expenses incurred after the Third Circuit's *Combustion Engineering* decision (i.e., December 2, 2004) in supporting the Claimant Agreement, defending the Avoidance Action, and attempting to confirm plans that violate Bankruptcy Code provisions should be disallowed.  According to records provided to the Office of the United States Trustee, as of December 2, 2004, the total amount of fees and expenses that had been incurred was $473,983 by Rice and $274,464 by Weitz.  *See* Exhibit D.  Even when the facts of this case are viewed most favorably to Weitz and Rice, there is no way to view as reasonable expenses incurred post-*Combustion Engineering* in continued attempts to confirm the same rejected construct.

Under any view of the totality of the circumstances, there are certain expenses Weitz and Rice have presented to justify their $2 million "facilitation fees" that should be denied as unreasonable.  For example, much of the money paid to Stutzman, Bromberg, Esserman & Plifka ("Stutzman") was incurred not to benefit the Debtors, but to represent the personal interests of Weitz and Rice.  Any expenses incurred in defending Weitz and Rice's ability to retain their $2 million "facilitation fees" should be disallowed.  According to records provided to the Office of the United States Trustee, Stutzman was paid a total of $706,314 by Rice and $414,389 by Weitz.  *See* Exhibit D.  In addition, both Weitz and Rice have provided the Office of the United States Trustee records indicating extensive travel on non-commercial jets, with Rice having a travel expense of $132,502 and Weitz having a travel expense of $4,592.  *Id*.

**III.    The Fourth Amended Joint Plan is Objectionable Because it Fails to Provide for the Return to the Debtors of Any Payments Deemed Unreasonable Under Section 1129(a)(4)**

Article 5.15 of the Fourth Amended Joint Plan provides that "the expenses paid pre-petition by the Debtors to the Claimant's Counsel pursuant to the Claimant Agreement shall be subject to approval by the District Court in its discretion." While this arguably allows for the Court's review under Section 1129(a)(4), it does not provide for the disposition of any payments to Claimants Counsel that are found to be unreasonable.  This failure is magnified by Article 5.14(b)(iii) of the Fourth Amended Joint Plan, which is essentially the same release provision criticized by the Bankruptcy Court in denying the Twelfth Amended Plan, and which would release Weitz and Rice from any liability regarding the payments that are the subject of this hearing.  *See In re Congoleum Corp.*, 2009 WL 499262 at *5-*6 (Bankr. D.N.J. Feb. 26, 2009) ("inclusion of § 5.14(b)(iii) in the Plan seeks to make [court] review a nullity" and  "if a plan were confirmed with the § 5.14(b)(iii) language proposed, any review by this Court of the pre-petition payments would be illusory").  Thus, the Acting United States Trustee objects to the Fourth Amended Joint Plan to the extent it does not provide for the collection of any disallowed fees and to the extent that Article 5.14(b)(iii) releases any cause of action the Debtors may have regarding the recovery of the Weitz/Rice Payments.

If this Court rules that the Weitz/Rice Payments are not reasonable under Section 1129(a)(4), the improvident payments should be returned to the Debtors.  Unless this Court enters an order at or before confirmation that directs the immediate return of such unreasonable payments to the Debtors, however, no action seeking their return will ever be brought, as under Article 5.14(b)(iii) of the Fourth Amended Joint Plan the Debtors will have waived the right to

bring such an action.  It would produce an absurd result if this Court disallowed as unreasonable the Weitz/Rice Payments while confirming a plan that released the Debtors' ability to recover those payments.

As a result, if this Court finds at the April 20, 2010, hearing that all or part of the Weitz/Rice Payments were unreasonable, it should enter an order directing Weitz and Rice to immediately return the unreasonable portion to the Debtors.  In the alternative, upon finding all or part of the Weitz/Rice Payments to be unreasonable this Court could await the confirmation hearing and, assuming all other confirmation requirements are met, place in the confirmation order a provision directing the return to the Debtors by a date certain of all payments deemed unreasonable under Section 1129(a)(4).

## CONCLUSION

In light of the foregoing, the Acting United States Trustee respectfully requests that this Court find the Weitz/Rice Payments to be unreasonable for purposes of 11 U.S.C. § 1129(a)(4), order the return of the unreasonable payments to the Debtors, and enter such further relief as it deems just.

Respectfully submitted,

ROBERTA A. DeANGELIS
ACTING UNITED STATES TRUSTEE
REGION 3

By:   /s/ Robert J. Schneider
      Robert J. Schneider
      Trial Attorney

By:   /s/ Mitchell B. Hausman
      Mitchell B. Hausman
      Trial Attorney

Dated:   April 13, 2010

21