<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

In re:

CONGOLEUM CORPORATION, *et. al.*,

        Debtors and Debtors-in-Possession.

_____

Civil Action No. 09-4371 (JAP)
Bankr. Case No. 03-51524

**OPINION**

PISANO, District Judge:

      Presently before the Court for review are expense payments totaling $2 million made to attorneys Joseph F. Rice and Perry Weitz, as Claimants' Counsel,[1] pursuant to the Litigation Settlement Agreement between the Debtors, certain pre-petition asbestos claimants who were parties to the Claimant Agreement, and attorneys Rice and Weitz pursuant to 11 U.S.C. § 1129(a)(4).  For the reasons set forth below, the Court finds that the expense payments to Rice and Weitz were reasonable under the totality of the circumstances and the payments are hereby approved.

    I.    Background[2]

      In the late 1990s, Congoleum began facing increasing numbers of asbestos related personal injury law suits.[3]  By February 2004, there were approximately 103,000 asbestos personal injury law suits pending against Congoleum.  Congoleum's costs to defend and settle these law suits continued to increase, and there were also several multi-million dollar jury

---

[1] All capitalized terms not defined in this Opinion shall have the meaning ascribed to them in the Debtors' Fourth Amended Joint Plan of Reorganization.
[2] The facts and procedural history of this protracted bankruptcy litigation are well-known to the parties; therefore, the Court shall only recite the facts relevant to review of the Rice and Weitz expense payments.
[3] Unless otherwise noted, all facts are taken from the Declaration of Howard N. Feist, III and are consistent with the testimony of both Joseph F. Rice, Esq. and Perry Weitz, Esq.

verdicts returned against the company stemming from exposure to asbestos contained in Congoleum products.  Prior to exhaustion of the company's primary insurance policies, the settlements and litigation expenses were always approved by Congoleum's insurers.

In March 2001, Liberty Mutual Insurance Company ("Liberty Mutual"), one of Congoleum's primary insurers, disclaimed coverage due to exhaustion of policy limits.  Liberty Mutual based this claim on non-cumulative provisions in its policies that limited Liberty Mutual's obligations in successive policies for a single occurrence, in this case the manufacture of asbestos containing products.  In response, Congoleum's excess insurers claimed that they were not bound by the non-cumulative provisions in the Liberty Mutual policies and argued that an additional $13 million in primary insurance coverage was left to be exhausted before the excess policies were triggered.  In May 2001, with Liberty Mutual disclaiming coverage, and exhaustion of the coverage provided by Congoleum's other primary insurer, Employers Insurance Company of Wausau ("Wausau"), looming, Congoleum unsuccessfully attempted to negotiate a coverage-in-place agreement with its excess insurers and to develop a plan for the orderly transition from primary coverage to excess coverage.

In September 2001, while negotiations for a coverage-in-place agreement were ongoing, certain of Congoleum's excess insurers filed an action styled *Congoleum Corporation v. ACE American Insurance Company, et al.*, in the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. MID-L-8908-1 (the "Coverage Action"), seeking declaratory judgment that the insurers had no obligation to provide coverage under the excess insurance policies.  All of Congoleum's excess insurers joined the Coverage Action and disclaimed coverage under their respective policies.  Congoleum continued to unsuccessfully negotiate for a coverage-in-place agreement, however.

By late summer 2002, Wausau claimed that its policy limits had been exhausted. Exhaustion of the Wausau policies occurred while Congoleum was defending an asbestos personal injury claim brought by Edmond Comstock.  As the trial began, Wausau agreed to settle the Comstock matter and partially pay the settlement amount with the remaining coverage under the Wausau policies.  Shortly after settling the Comstock case, and thereby exhausting its primary insurance coverage, Congoleum was forced to defend actions brought by asbestos claimants Kenneth Cook and Richard Arsenault, both of whom were represented by Perry Weitz. By the fall of 2002, a New York state court jury had determined damages via a bifurcation procedure employed by the New York courts and had awarded Cook and Arsenault damages of $18.1 million and $15.8 million respectively.  None of Congoleum's excess insurers were willing to participate in settlement negotiations with Weitz in the Cook and Arsenault cases.  At the time, Weitz was demanding $20 million to settle both cases.  Eventually, Congoleum was able to reach an agreement with Weitz under which it would settle the Cook and Arsenault cases for $8 million each.  Congoleum paid each plaintiff $800,000 in cash and $7.2 million secured by a first priority security interest in insurance proceeds.  Congoleum tendered both $800,000 cash payments in October 2002.  After settling with Cook and Arsenault, Congoleum still faced a significant number of asbestos related law suits.  Congoleum's excess insurers refused to participate and provide coverage for these suits, and continued to actively litigate in the Coverage Action.

In October 2002, Congoleum began examining its options for resolving its asbestos liability, and began to explore the possibility of filing a pre-packaged plan of reorganization under Chapter 11.  In November 2002, Congoleum contacted Rice and Weitz to discuss whether a pre-package bankruptcy would be feasible.  Subsequently, Rice and Weitz agreed to act as

3

Claimants' Counsel on behalf of holders of asbestos personal injury claims against Congoleum but indicated that they would require a fee for leading the negotiation of a global settlement on behalf of asbestos personal injury claimants.  Congoleum, Rice, and Weitz began negotiating the facilitation fee that would be paid to Rice and Weitz for their participation as Claimants' Counsel.  The initial requests from Rice and Weitz ranged up to $30 million to be split between them.  Congoleum advised Rice and Weitz that it would not pay a facilitation fee for their participation.  Ultimately, Congoleum agreed to pay Rice and Weitz a flat, fixed expense fee of $1 million each to cover all out-of-pocket expenses incurred in their role as Claimants' Counsel, including the cost of securing financial advisors and hiring legal counsel.  Congoleum agreed to pay a fixed expense fee because a fixed fee limited the company's expense and gave Claimants' Counsel responsibility for controlling the costs of due diligence and advisors.  Agreeing to a fixed expense fee also avoided potential disputes between Congoleum and Claimants' Counsel over the reasonableness and necessity of expenses incurred.

On April 10, 2003, Congoleum entered into the Claimant Agreement, which settled the asbestos claims of approximately 79,000 pre-petition asbestos claimants.  Section IV of the Claimant Agreement provided that Congoleum would pay Rice and Weitz expense fees totaling $1 million each

> to pay all out-of-pocket expenses, reasonable professionals' fees and expenses, and other costs that Claimants' Counsel may have incurred or may incur (i) in connection with the negotiation and implementation of this Claimant Agreement . . . (ii) in connection with the negotiation of a possible "pre-packaged" chapter 11 plan of reorganization for Congoleum, and/or, (iii) in connection with due diligence investigations related to a possible chapter 11 plan of reorganization.

The Claimant Agreement did not require Rice and Weitz to provide Congoleum with an accounting of their out-of-pocket expenses.

In addition to the expense payments to Rice and Weitz, the Claimant Agreement also provided deadlines and procedures for asbestos personal injury claimants to submit claims against Congoleum.  Rice and Weitz mailed letters to all the asbestos plaintiffs' law firms with claims against Congoleum and provided them with a summary of the Claimant Agreement and its deadlines.  By July 1, 2003, approximately 115,000 asbestos claimants had expressed an interest in participating in the Claimant Agreement.  The claims reviewer would ultimately determine that approximately 79,000 asbestos personal injury claimants were qualified to participate in the Claimant Agreement.  The claims of those approximately 79,000 claimants were subsequently settled through the Claimant Agreement.  Rice and Weitz were each paid $500,000 in June 2003 for their out-of-pocket expenses incurred in negotiating the Claimant Agreement.

In July 2003, a Pre-Petition Asbestos Claimants' Committee was formed.  The committee was comprised of Rice, Weitz, Steven Kazan, Esq., Russell Budd, Esq., Bryan Blevins, Esq., John Cooney, Esq., and Matt Bergmann, Esq.  The Pre-Petition Asbestos Claimants' Committee members represented the majority of the asbestos personal injury claimants with claims against Congoleum.  Around this time, Congoleum also vetted candidates to serve as the Futures Representative and ultimately designated R. Scott Williams to represent the interests of future and unknown asbestos claimants.  Claimants' Counsel engaged a financial consultant to investigate Congoleum's business affairs and the equity value of the company as part of exploring the feasibility of a pre-packaged Chapter 11 plan of reorganization.  Through the summer of 2003, Congoleum, Claimants' Counsel, the Futures Representative, and Congoleum's parent company, American Biltrite, Inc. continued to negotiate a pre-packaged plan of

reorganization.  In October 2003, Congoleum made the second and final payment of $500,000 each to Rice and Weitz to cover their continuing out-of-pocket expenses.

On October 27, 2003, Congoleum began soliciting votes on its pre-packaged plan of reorganization.  Congoleum's pre-packaged plan was subsequently approved by the majority of Congoleum's creditors, including asbestos personal injury claimants.  Congoleum, and its affiliated entities, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on December 31, 2003, and were prepared to seek immediate confirmation of the pre-packaged plan.  The pre-petition plan was filed with the bankruptcy court on January 22, 2004.  The Futures Representative withdrew his support in June 2004, due some modifications to the plan.

 Congoleum continued to negotiate the terms of the reorganization plan, and on November 12, 2004, the Fourth Amended Plan of Reorganization was filed.  While Congoleum was soliciting votes on the Fourth Amended Plan of Reorganization, the Third Circuit issued its Opinion in *In re: Combustion Engineering*, 391 F.3d 190 (3d Cir. 2005).  The *Combustion Engineering* decision changed the legal landscape for asbestos pre-packaged bankruptcies and necessitated the renegotiation of certain provisions in the Fourth Amended Plan of Reorganization.  A Sixth Amended Plan of Reorganization was subsequently filed and solicitation began in August 2005.  In September 2005, however, Congoleum learned that certain parties to the Claimant Agreement represented by Rice and Weitz no longer supported the Sixth Amended Plan of Reorganization.  Attempts to negotiate a resolution to the asbestos claimants' objections proved unsuccessful, and Congoleum consequently withdrew the Sixth Amended Plan of Reorganization in December 2005.

In late 2005, Congoleum filed an adversary proceeding in the bankruptcy court contesting the validity of the Pre-Petition Settlement Agreement and the Claimant Agreement (the "Pre-

Petition Asbestos Agreements"), as well as to avoid and recover the expense fees paid to Rice

and Weitz under the Claimant Agreement (the "Omnibus Avoidance Action").  In March 2006,

Rice and Weitz provided Congoleum with documentation of the expenses incurred by Claimants'

Counsel.  The bankruptcy court ordered the parties to participate in mediation in the summer of

2006.  The mediation was conducted before the Honorable Mark B. Epstein and the Honorable

Judith H. Wizmur, Chief Judge of the United States Bankruptcy Court for the District of New

Jersey.  Congoleum agreed that it would not seek the return of any money spent by Rice and

Weitz in connection with the mediation.  Consequently, Rice and Weitz participated in the

mediation.  The mediation resulted in the filing of the Tenth Modified Joint Plan of

Reorganization, which was supported by the Asbestos Claimants' Committee, the Futures

Representative, the Bondholders' Committee, and Claimants' Counsel.  Certain insurers objected

to the plan and brought a summary judgment motion before the bankruptcy court.  The

bankruptcy court found that the Tenth Modified Joint Plan of Reorganization was not

confirmable as a matter of law.  The parties continued to mediate; however, those efforts did not

result in a mutually acceptable plan.  Congoleum continued to prosecute the Omnibus Avoidance

Action during this time.  Ultimately, the bankruptcy court granted a summary judgment motion

filed by Congoleum seeking to avoid the security interests granted in connection with the Pre-

Petition Asbestos Agreements finding that the security interests in Congoleum's insurance

proceeds contained in the Pre-Petition Asbestos Agreements were invalid.

      While the bankruptcy action, including the Omnibus Avoidance Action, was pending in

the bankruptcy court, the Coverage Action was continuing in state court.  On May 18, 2007, the

state court ruled with respect to Phase 1 of the Coverage Action, finding that Congoleum's

excess insurers had no obligation to provide coverage for the Claimants Agreement because the Claimants Agreement was unreasonable.

On October 12, 2007, Congoleum filed a summary judgment motion in the Omnibus Avoidance Action seeking to disallow and subordinate all claims settled under the Pre-Petition Asbestos Agreements, rescind the Pre-Petition Asbestos Agreements, the Superseding Security Agreement, and the Collateral Trust Agreement arguing that the agreements had been legally frustrated by intervening events. The bankruptcy court denied Congoleum's summary judgment motion and entered judgment for the asbestos claimants.

On February 5, 2008, after a great deal of negotiation and mediation, Congoleum, the Bondholders' Committee, the Asbestos Claimants' Committee, and the Futures Representative filed the Joint Plan of Reorganization, which incorporated the terms of a global settlement agreement, with the bankruptcy court. On June 6, 2008, the bankruptcy court denied confirmation of the Joint Plan of Reorganization ruling that it provided unequal treatment among asbestos claimants. The bankruptcy court also issued an order to show cause as to why the case should not be converted or dismissed. Following a June 26, 2008 hearing, the bankruptcy court vacated its order to show cause and gave the parties until the end of 2008 to propose a confirmable plan of reorganization.

Congoleum continued to prepare to litigate the Omnibus Avoidance Action, and on July 17, 2008, the bankruptcy court entered a scheduling order requiring Congoleum and the Bondholders' Committee to move forward with the claims, to file any amended complaints, and to commence a new adversary proceeding against Rice, Weitz, Steven Kazan, Russell Budd, John Cooney, Matthew Bergman, and each of their respective law firms on or before July 29, 2008. Contemporaneously, Congoleum, the Bondholders' Committee, and the Futures

Representative engaged in negotiation with Rice and Weitz, as Claimants' Counsel, and the Asbestos Claimants' Committee in order to resolve the treatment of asbestos claims under the plan. After a contentious and difficult negotiation, the parties reached a global settlement with respect to the Avoidance Actions (the "Litigation Settlement Agreement"). The Litigation Settlement Agreement is a comprehensive settlement that resolved all of the fundamental equality of distribution issues. The Litigation Settlement Agreement was executed by counsel for 87% of the asbestos claimants who were parties to the Pre-Petition Asbestos Agreements. Under the Litigation Settlement Agreement, all parties to Pre-Petition Asbestos Agreements with Congoleum waived any and all rights with respect to those agreements. Instead, under the Litigation Settlement Agreement, those claims will be submitted to the Plan Trust for resolution. All claims submitted to the Plan Trust will receive the same treatment, notwithstanding when the claim arose. All claims by and between Congoleum and Rice and Weitz were also resolved by the Litigation Settlement Agreement. Under the terms of the agreement, Congoleum agreed to release the claims it was pursuing against Rice and Weitz in the Omnibus Avoidance Action, including avoidance of the $1 million expense payments. The Litigation Settlement Agreement also provided that if Rice and Weitz incurred any expenses over and above the $1 million they had already been paid as Claimants' Counsel, they would file an application with the court and obtain court approval for the expenses. The Litigation Settlement Agreement was filed in the bankruptcy court on August 4, 2008. On October 22, 2008, the bankruptcy court approved the Litigation Settlement Agreement, holding that the settlement "falls above the lowest point in the range of reasonableness." However, despite finding the plan reasonable, the bankruptcy court stated that a separate determination would need to be made as to whether certain individual

provisions of the Litigation Settlement Agreement were confirmable, specifically the provisions allowing the $1 million expense payments to Rice and Weitz.

The terms of the agreement were incorporated into the November 14, 2008 Amended Joint Plan of Reorganization; however, the bankruptcy court ultimately determined that the plan was unconfirmable as a matter of law because did not include a provision providing for court review of the Rice and Weitz payments and a mechanism for recovery of those payments should they be disallowed. Congoleum appealed, and on appeal this Court ruled that any future plans must provide for judicial review of the Rice and Weitz payments. The Fourth Amended Plan of Reorganization currently pending before this Court contains such a provision. The parties to the Litigation Settlement Agreement have since agreed to amend that agreement to reflect the need for judicial review of the expense payments, and an amended Litigation Settlement Agreement has been executed.

On March 29, 2010, this Court scheduled an evidentiary hearing on the Rice and Weitz payments. The parties were directed to submit briefs in support of or in opposition to judicial approval of the payments. Docket Entry No. 490. Congoleum, Claimants' Counsel, the Bondholders' Committee, and the Asbestos Claimants' Committee submitted briefs or statements in support of the payments. Docket Entry No. 517, 518, 549, 553. The United States Trustee filed an objection to the payments. Docket Entry No. 520. An evidentiary hearing was held before this Court on April 20, 2010. Docket Entry No. 561. The Court took testimony from Howard N. Feist, III, Chief Financial Officer of Congoleum, Rice, Weitz, and Joseph Kern, a bankruptcy analyst employed by the United States Trustee. *Id.* The Court also accepted documentary evidence showing the expenses Rice and Weitz incurred in their role as Claimants' Counsel. *Id.*

II.    Legal Standard

The court may confirm a plan of reorganization only if "[a]ny payment made or to be made by the proponent [or] by the debtor, . . ., for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a)(4).  What constitutes a "reasonable" payment is not defined in 11 U.S.C. § 1129(a)(4).  *In re TCI 2 Holdings, LLC*, ___ B.R. ___, 2010 WL 1540115 (Bankr. D.N.J. 2010).  Likewise, courts in this circuit have not articulated a test for "reasonableness" under 11 U.S.C. § 1129(a)(4).  *Collier on Bankruptcy* states that the inquiry is "open-ended" and that a payment may be approved if it is reasonable in relation to other costs incurred in the case, reasonable in relation to other cases, or reasonable in relation to the fee structure of the individual or entity requesting payment.  7 *Collier on Bankruptcy* 1129.02[4].  When determining if a payment is reasonable, courts consider "all relevant circumstances."  *In re Burlington Motor Holdings, Inc.*, 217 B.R. 711, 716.  Further, "[w]hat constitutes a reasonable payment will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate."  *In re: Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 517 (5th Cir. 1998).

III.    Discussion

In its August 17, 2009 Opinion, this Court stated that it would consider the "totality of the circumstances" when reviewing the reasonableness of the Rice and Weitz payments prior to confirmation.  The Court has now reviewed those payments and concludes that the payments were reasonable.

At the time Congoleum approached Rice and Weitz regarding negotiation of the Claimant Agreement, Congoleum was facing claims from more than 100,000 asbestos personal injury claimants represented by numerous attorneys.  Declaration of Howard N. Feist, III at ¶ 23 ("Feist Declaration").  Rice and Weitz are both established plaintiffs' attorneys with extensive experience representing asbestos plaintiffs.  Declaration of Joseph F. Rice ("Rice Declaration") at ¶ 2; Declaration of Perry Weitz ("Weitz Declaration") at ¶ 2.  Additionally, both Rice and Weitz have experience negotiating on behalf of claimants in asbestos related bankruptcies.  Rice Declaration at ¶3; Weitz Declaration at ¶ 3.   In 2002, with its asbestos liability expanding and its excess insurers disclaiming coverage, Congoleum began to explore filing a pre-packaged bankruptcy.  Feist Declaration at ¶ 13.  Congoleum needed the support of the asbestos personal injury claimants, and their counsel, to successfully pursue a pre-packaged bankruptcy.  To that end, Congoleum sought Rice's and Weitz's assistance in negotiating a global settlement with the pre-petition asbestos claimants.  Weitz Declaration at ¶ 4.  Rice's and Weitz's experience representing asbestos personal injury plaintiffs, and the respect that they had both earned within the plaintiffs' bar, made Rice and Weitz a logical choice to represent the interests of the asbestos claimants in negotiation of a global settlement.  Rice Declaration at ¶ 4.  After determining that negotiating a global settlement with Congoleum would be in the best interests of the asbestos claimants, including their own clients, Rice and Weitz agreed to act as Claimants' Counsel on behalf of the asbestos personal injury claimants.  Rice Declaration at ¶ 18; Weitz Declaration at ¶ 4.

Investigating the feasibility of a pre-packaged bankruptcy and creating a consensus among the numerous asbestos claimants was a monumental task requiring Claimants' Counsel to travel extensively and to engage the services of various professionals.  Rice Declaration at ¶ 12.

Congoleum agreed to pay Rice and Weitz $1 million each to cover out-of-pocket expenses incurred while carrying out their duties as Claimants' Counsel. *Id.* at ¶ 9. None of the $1 million paid to Rice or Weitz represented a fee for services rendered. Rice Declaration at ¶ 10; Weitz Declaration at ¶ 9. The expense fees were necessary to secure the participation of Rice and Weitz because it would have been unreasonable to expect their individual clients to pay the out-of-pocket expenses required to negotiate a global settlement of Congoleum's pre-petition asbestos liability. Rice Declaration at ¶ 9. After receiving payment, both Rice and Weitz segregated the $1 million expense fees in separate accounts and used the money only for expenses incurred while acting as Claimants' Counsel. Rice Declaration at ¶ 15; Weitz Declaration at ¶ 14.

The Court has approved more than $100 million in fees and expenses to date, all of which have been paid by the Estate. In addition to the fees and expenses paid by the Estate, other parties to this bankruptcy have paid their professionals significant fees and expenses that did not require Court approval. In comparison, the $1 million expense fees paid to Rice and Weitz are reasonable.

The Court has reviewed an accounting of the expenses incurred, as well as copies of invoices and receipts submitted by Claimants' Counsel, and finds that Rice and Weitz used the expense fees paid by Congoleum to cover only their out-of-pocket expenses incurred as Claimants' Counsel.

The United States Trustee alleges that a conflict of interest exists with respect to both Rice and Weitz because they served in dual roles as Claimants' Counsel and counsel to asbestos personal injury claimants, thus rendering the expense payments unreasonable. The United States Trustee relies in part upon the May 18, 2007 decision of Superior Court Judge Nicolas J.

Stroumtsos in which Judge Stroumtsos found that Congoleum's excess insurers had no obligation to pay claims settled by the Claimant Agreement because the agreement was entered into in bad faith, rendering it unreasonable. *Congoleum Corporation v. ACE American Insurance Co., et al*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No. MID-L-8908-01. Judge Stroumtsos found that the Claimant Agreement not been made in good faith because Gilbert Heintz & Randolph ("GHR"), a law firm Congoleum retained for advice on filing a pre-packaged bankruptcy, had colluded with Rice and Weitz to create a scheme in which the asbestos claimants represented by Rice and Weitz would be assured a recovery while Congoleum would be able to free itself of asbestos liability. *Id.* at 12. The excess insurers would be left to bear the cost of the claims settled under the Claimant Agreement. *Id.* Judge Stroumtsos also noted that an actual conflict existed with respect to GHR and Weitz because of their joint representation of asbestos claimants against Congoleum. *Id.* at 13. Much of Judge Stroumtsos's Opinion rests on the fact that Congoleum's excess insurers did not have a meaningful opportunity to participate in negotiation of the Claimant Agreement. *Id.* at 11. Judge Stroumtsos found that "[t]he settlement clearly harmed the interests of the absent, non-participating insurance companies, who were never meaningful contributors to the terms of the settlement." *Id.* at 12. The Superior Court Opinion does not imply that Rice and Weitz owed conflicting loyalties to the asbestos personal injury claimants and to Congoleum.

After carefully reviewing the evidence presented, the Court concludes that at all times Rice and Weitz were representing the interests of their asbestos personal injury clients by working with Congoleum to negotiate a pre-packaged plan of reorganization under which asbestos personal injury claimants would likely recover more than they would have if

Congoleum had gone into a "free fall" bankruptcy.  At no time did Rice or Weitz represent the interests Congoleum or any of its affiliated entities.

IV.     Conclusion

For the reasons set forth above, the expense payments to Joseph F. Rice and Perry Weitz are reasonable under the totality of the circumstances.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: May 7, 2010